(Huron County Common Pleas Court.)

## THE STATE OF OHIO v. E. C. MORRILL.

---

1. The statute entitled "An act to regulate the practice of medicine in the State of Ohio," passed Feb'y. 27, 1896, 92 O. L., 44,) establishes certain requirements and provides a penalty for their violation, as to three classes of persons, viz.: (1) graduates in medicine or surgery; (2) legal practitioners who are not graduates; and (3) persons engaged in practice who are not graduates and not entitled to practice.

2. As to members of the first two classes described, the statute requires that they shall take certain steps to obtain from the state board of medical registration certificates of graduation or right to practice. The statute does not require that such certificates shall be left with the probate judge for record; but in that respect, as to said two classes, is permissive merely, although providing what shall be the legal effect of the certificates as evidence, when voluntarily so left for record. As to the third class of persons, the certificate of the state board, when left with the probate judge for record, entitles the owner "to practice medicine or surgery in Ohio" for one year. Section 4403*d* of the statute makes the leaving of such certificate with the probate judge of the county, mandatory "*before entering* upon the practice."

3. An indictment which does not indicate to which of said three classes the accused belongs and charges only a failure to "obtain" from the state board a certificate, without alleging any failure on his part to do the acts required preliminary to the issuance of such certificate by the board, is defective, and should be quashed for indefiniteness.

4. Said act is not unconstitutional as being an interference with vested rights or as impairing the obligation of contracts.

WILDMAN, J.

In the case of the State against E. C. Morrill, the defendant moves to quash the indictment upon the ground that the same is too indefinite and uncertain to apprise the defendant of the nature of the charge against him, and that it sets forth the evidence to sustain the charge, and not the charge itself.

The indictment alleges in terms that the defendant, at the time and in the county stated, did "knowingly, wilfully and unlawfully practice medicine without having first complied with the provisions of an act of the General Assembly of the state of Ohio, entitled, 'An act to regulate the practice of medicine in the State of Ohio,' passed February 27, 1896, in this. to-wit:—He, the said E. C. Morrill, not having then and there and theretofore obtained or received from the state board of medical registration and examination of the state of Ohio, a certificate as required by the act aforesaid, entitling him to practice medicine in the state of Ohio, and he, the said E. C. Morrill, then and there being a resident of said Huron county, Ohio, and not having then and there and theretofore left with the probate judge of said Huron county, Ohio, for record, any certificate to practice medicine, issued to him, the said E. C. Morrill, by authority of the board of medical registration and examination of the state of Ohio, unlawfully did then and there in an inquest of lunacy of one Henry B. Williams, make out a certain certificate of insanity such as is provided for in sec. 704, of the Rev. Stat., of Ohio, and did then and there append his name and signature to said certificate, and did then and there append the letters M. D. to his name so signed as aforesaid, to said certificate aforesaid."

It does not appear by this indictment whether the claim is made by the state that the defendant was a person who had been engaged in the practice of medicine for any period, long or short, without a diploma from some legally chartered medical college or institution, and within the terms of that provision of the law of 1896, requiring certain persons to apply to the state medical board of registration for the purpose of examination to obtain certificates entitling them to practice medicine. Indeed, the indictment does not disclose to which of the three classes of persons described in the act, the indictment is intended to apply. I do not say that it is indefinite in this respect, or that there is any requirement in the law that an indictment should state to which of these classes it is intended to apply. But I call attention to the fact, in view of the argument that is made that the statute, while held by our supreme court to be constitutional in certain respects, has not been, as it is claimed, held to be constitutional in respect to persons who are embraced in the class to which, it is assumed in argument, that this defendant belongs.

In the discussion, though not specifically in the motion, the indictment is assailed upon the ground that the act, in so far as it could apply to this defendant, is unconstitutional as an interference with vested rights; that it is in contravention of the provision of the constitution of the United States, that no state shall pass any *ex post facto* law, or any law impairing the obligation of contracts.

I have examined the recent case of France against the State, 57 O. S., 1, (Advance Sheets). The statement of facts does not apprise us of the particular class to which the man indicted there, belonged.

The statement briefly is, that plaintiff in error was indicted by the grand jury of Sandusky county, for practicing medicine in that county without having obtained from the board of medical registration and examination, the certificate required, to entitle a person to practice medicine in this state. He was tried and convicted at the April term, 1897, of the court of common pleas and sentenced to pay a fine and costs, to reverse which judgment he, on leave granted him, filed his petition in error in the court above.

It does not appear whether he was a person practicing under a diploma previously obtained from any medical college; or whether he was a person practicing and entitled to practice under the previously existing laws of the state of Ohio without a diploma; or whether he was included in the third class of persons not entitled to practice by virtue of any previous law, and required under this new law if constitutional and valid as to him, to make application to the state board and receive a certificate entitling him to practice.

While in the France case, the question was not particularly discussed, whether this statute is unconstitutional as being an inhibition of the provision of the constitution of the United States, prohibiting states from passing *ex post facto* laws, or laws impairing the obligation of contracts, the suggestion was made to the court in argument by counsel, as one of the grounds for holding the statute to be invalid, that (quoting the language of the argument of counsel as given on page 5), "an act of the legislature that divests rights, that violates contracts, or that assumes to control or exercise judicial power is unconstitutional."

The supreme court, I believe, does not decide this precise question as to whether the act violates the provision of the federal constitution referred to; but Judge Williams, speaking for the court, says: "If the statute is constitutional, it is not claimed there is any er-

ror in the record for which the judgment below should be reversed. The contention is, that the act, in some of its provisions is repugnant to the constitution of this state, and in others, to the constitution of the United States; and that the remaining provisions ʼof the statute are so dependent,in their practical operation, upon those which are subject to these constitutional infirmities that the whole act becomes invalid.''

So it appears that the attention of the court was invited to the consideration of the question whether there was a violation of the provision of the constitution of the United States,ʼinhibiting any act of the state legislature impairing the obligation of contracts.

One of the main arguments here presented is, that this statute is unconstitutional on the same ground. The supreme court in the France case, held the act to be constitutional at least, in so far as it was necessary so to hold it. (See 2nd and 3rd syllabi). The supreme court seem to have passed more particularly upon the other asserted ground of error, viz: That the state board was acting in a judicial capacity, and, in overruling that point, held that they were acting rather in an administrative one, and that there was no violation of any constitutional provision limiting judicial acts to judicial bodies or tribunals provided for by the constitution and the law.

I am inclined to think, however, even without the aid of this decision of the supreme court, but in entire harmony therewith, that the act is consitutional; that it does not impair the obligation of any contract. It is not argued in the case before me, especially, that the act is an *ex post facto* law, and perhaps it is conceded by counsel that it is not such. It looks to the future. It does not make· an act criminal which was committed before the passage of the act. It does not punish a man for practicing medicine prior to its passage, so that it is not *ex post facto* in the sense of being retroactive. Nor do I think that this act can be held to be one impairing the obligation of a contract. The argument of counsel is, that it prohibits a man from the use of certain letters appended to his name and designating his profession; and that he has acquired the right to use those initials by virtue of a certificate or diploma from some medical institution in which he has taken a course of study entitling him to their use. But, in my opinion, he had a right to use the initials before the passage of this law without regard to whether he ever received a diploma or not. There was nothing in the law, so far as I know, before that time, that in terms, made the use of such a designation of force in any respect. It probably would have had, without regard to

[COPYRIGHT, 1898, BY CARL G. JAHN.]

VOL. V. —*11

the law, some effect as evidence, as indicating the fact that a man was claiming himself to be a physician,—that he was holding himself out as such, that is, if, under the circumstances in which the initials were used,and by the person who used them, they were indicative of such an intention. It is the law, not the college, that gives the right to practice, no matter what a medical college says in its certificate. The law did provide, prior to the passage of this act, that when a man had studied for a number of years in any medical college of a certain character, or when he had practiced medicine for a certain period, that he should be entitled to practice. There were such provisions in secs. 4403 and 6992, which were in force at the time of the passage of this law of 1896.

I do not think that the present law impairs the obligation of a contract any more than those acts did, and while I do not remember that our supreme court has expressly passed upon their constitutionality,where they incidentally came in question, in some cases,it has spoken of them as valid.

I think the constitutionality of acts of this character has been held in cases in other states,if not in this, treating them as regulations of the practice of medicine in the general interest of the public, that is, for the public welfare, and therefore, as a sort of exercise of a general police power permitted to the legislature.

The certificate of a medical college does not, in my judgment, give· the right, whatever it may say, to practice medicine. The statute gives the right; or, perhaps it would be more exact to say that neither the certificate of the medical college, nor the statute, gives it. There is an inherent natural right to practice, in the absence of any restriction by law. A medical college can not confer a right that already exists, and when a medical college gives its diploma, it fulfills whatever contract it may be said to have entered into with the person who enters its doors and assumes to take its instructions.

The college contracts with the student, impliedly, if not expressly, that if he performs the work which is required in the curriculum of the institution, it will give him a certificate or diploma,at the termination of his studies, such as shall certify to the world that he has taken its studies and that he is therefore qualified to practice. When such certificate or diploma has been bestowed, the contract has been fully performed so far as the parties are concerned. All after that is a matter, not of contract, but a matter of regulation by the state. The obligations of the contract are not impaired by such regulation.

Passing from the question of the constitutionality of the law, in order to as-

certain whether this indictment is obnoxious to the claims made against it in the motion to quash, it becomes necessary to examine somewhat the phraseology of the act of 1896 (92 O. L., pp. 44-48), to see what the legislature were trying to do. I invite the attention of counsel to some of the phrases which seem to throw light upon what the legislature intended to require from the different classes of persons affected by the act. Section 4403c, provides generally: "No person shall practice medicine, surgery or mid-wifery in any of its branches in this state without first complying with the requirements of this act." This general clause applies to all of the classes mentioned in the statute.

The statute then, in the same section, provides as to practitioners having diplomas, and expressly requires that, if a graduate in medicine or surgery, such person shall either personally, or by letter or proxy, present his diploma to the state board of medical registration and examination for verification, and shall file his affidavit stating that he is the person named in the diploma and is the lawful possessor of the same, and giving his age, and the time spent in the study of medicine. So far, those are the only requirements from the class of persons to which, it is substantially claimed by counsel in argument, Doctor Morrill belongs; he is said to be one of those having a diploma, being a graduate in medicine and surgery.

Now, the statute has first said that no person shall practice medicine, surgery or mid-wifery, in any of its branches in this state, without first complying with the requirements of this act; then immediately it says, that a graduate in medicine and surgery shall do these specific acts. Nowhere in the statute is there any other express requirement as to graduates.

It is very apparent that the law provides a penalty for a refusal to comply with certain requirements on the part of the persons included in the class of graduates of medical institutions. But, it does not follow that all the requirements of this act are obligatory upon such persons. To ascertain whether they are, or not, it is necessary to read a little further. It nowhere in this act says, in terms, that a person who is a graduate of a medical college, shall file his certificate, when obtained from the state medical board, with the probate judge of the county in which he resides.

The statute does provide that if the board shall find the diploma to be genuine, and from a legally chartered medical institution in good standing, as determined by the board, and the person named therein be the person holding and presenting the same, the board shall issue its certificate to that effect, signed by its president and secretary, which, when left with the probate judge for record, as hereinafter required, shall be conclusive evidence that its owner is entitled to practice medicine or surgery in this state.

This same provision,—identical in terms,—is found with reference to lawful medical practitioners who are not graduates of any college of medicine or surgery. Like the, graduates, they are required to furnish the state board with the evidence of certain facts. If the board is satisfied, from the affidavit and other information received, the requirements seeming to be a little more strict than in the other case (of the claimed graduate), the board shall issue its certificate. In the first instance, the board *finds* the diploma to be genuine, etc. In the second, the board must be *satisfied* that the applicant was a legal practitioner of medicine in Ohio, at the time of the passage of this act. The statute requires that the state board shall issue its certificate to that effect, which, when left with the probate judge for record, shall be conclusive evidence that its owner is entitled to practice medicine or surgery in this state,—the phraseology of this last clause being, as I have said, precisely the same as that in the case of practitioners who are graduates.

The legislature simply prescribe what the effect shall be of the filing of the certificate with the probate judge, but do not make such filing mandatory in the case of either of the two classes to which I have referred; that is, persons who are graduates of medical colleges and persons who, not being graduates, were still, under the laws previously in force, entitled to practice.

There is a third class provided for. It will be noted that the language of the legislature is entirely different with regard to this class both as to requisites and nature of the state board's certificate and its filing with the probate judge. As to this last class, the statute provides: "If engaged in the practice of medicine in this state at the time of the passage of this act, but not a legal practitioner under the laws in force at such time, nor a graduate in medicine or surgery, as above defined, he shall present himself before the board," etc.

Instead of applying in writing, the person must personally appear and submit to such examination as to his qualifications for the practice of medicine or surgery as the board may require. If such applicant passes an examination satisfactory to the board, the board shall issue its certificate to that effect, which, when left with the probate judge for record, "*shall entitle the owner to practice* medicine or surgery in Ohio, for a period of one year next ensuing from the date thereof." The other certificates which have been mentioned, do not entitle the holder to practice: that is to say, they

are not certificates admitting him to practice. They are rather certificates showing that he is already entitled to practice.

As well suggested by counsel in argument, the statute does not say as to the first two classes, that the record of the certificate shall be the only evidence of the right to practice; but it does say that it shall be conclusive evidence. As to these two classes, there is no mandatory provision that a certificate shall be filed with the probate judge; nor up to this point in the statute, is there any mandatory provision that any of these certificates shall be so filed.

But looking at the next section,—4403*d*, —we read: "The person receiving a certificate *to practice* medicine or surgery under sec. 4403*c*, *shall*, before *entering* upon the practice, leave his certificate with the probate judge of the county in which he resides, for record."

There is no requirement that any one else shall, before entering upon the practice, leave a certificate with the probate judge. There is no provision as to any one else entering upon the practice at all. The other classes are already in the practice prior to the passage of this act and entitled to be in the practice; so that the only mandatory requirement that I have been able to find in that statute applicable to persons already entitled to practice medicine under the old statute, is the requirement that a person shall take the proper steps provided for, to obtain from the state board a certificate. The statute does not require that he shall file it with the probate judge, for record; but the statute does provide that, when filed, it shall have a conclusive effect as evidence. The filing is permissive to him, rather than mandatory.

The statute provides further, in section 4403f: "Any person shall be regarded as practicing medicine or surgery within the meaning of this act, who shall append the letters M. D. or M. B. to his name," etc.

I will say that my first impression, when this section was read in argument, without a very critical examination of it, was, that the expression, "shall be regarded as," was equivalent to holding, "shall be conclusive evidence of;" and it seems to me now, that it is a strange provision of the law, that the act of appending certain initials to a man's name shall be in itself, treated as the practice of medicine or surgery rather than as evidence in the nature of an admission that he is engaged in such practice. It seems to me as strange as it would be to say that the signing of P. M. to a man's name would constitute him a postmaster. It may be an evidence that he is a postmaster; it may be his own statement that he is a postmaster; but to say that the signing of the letters P. M. to his name makes him a postmaster would be a somewhat remarkable deduction.

In this instance, however, I am inclined to think that the legislature, from the words immediately following this, did intend to indicate that the appending the letter M. D. was to be treated like that of giving a prescription, or the practice of an act of surgery; that it was to be regarded as practice; in other words, that the signing and use of the initials by any person who has not complied with such requirements of the act as affect him, are prohibited to him.

I have come to this conclusion by noting the words which immediately follow those which I have just read. For the purpose of making it clear, I will read a little further in this section:—"who shall append the letters M. D. or M. B. to his name, or for a fee prescribe, direct or recommend, for the use of any person, any drug or medicine, or other agency for the treatment, cure or relief of any wound, fracture or bodily injury, infirmity or disease."

These other two acts are manifestly a practice of medicine or surgery, and the legislature seems to make no distinction between such acts and the appending of the initial letters M. D. or M. B. They are put in the same class; therefore, I think the legislature intended to prohibit either and all of these acts to any person who has not first complied with such requirements of this law as affect him.

I have sufficiently indicated that the law, in my judgment, forbids even persons who are graduates of medical colleges, from doing those acts of so-called practicing medicine until such persons have complied with the requirements of the act which are obligatory upon the class to which he belongs.

I said at the outset, that this indictment does not disclose to which class Doctor Morrill belongs. The prosecutor, in drafting the indictment, evidently considered that, in regard to the statute requiring the filing of a certificate with the probate judge, it was no matter whether the person practicing medicine belonged to the first, the second, or to the third class; that is, no matter to which of the three classes he belonged, if he belonged to one.

As to the claimed violation of the law in failing to record the certificate, or, more precisely, in failing to leave it with the probate judge, I think, to bring the defendant within the class of offenders against this provision of the law, there should be some averment in the indictment showing him to be a person not before that time entitled to practice, but one upon whom devolved the necessity of leaving his certificate with the probate judge. There being no such averment in this indictment (probably no such averment could be made, because it is to be presumed that Doctor Morrill does not belong, as understood in argument, to that class), the indictment, in so far as it attempts to charge him with violating the law in not filing a certificate with the probate judge, has charged no offense. The indict-

ment, however, attempts to charge him with failing to comply with the law in other respects, that is, in not producing to the state board, the evidence of his right to practice, by virtue of being a graduate of a medical institution. But when I come to consider the indictment in this aspect, I find that there is no direct averment that he ever failed to make application to the state board for the required certificate. There is no averment that he did not produce to the state board his diploma, or the other evidence required by law. Nor, in fact, is there any averment that he has failed to do anything, except, it is said, that he has failed to obtain from the state board a certificate. There is a statement which I regard as a legal conclusion to this effect, "that he did knowingly, wilfully and unlawfully practice medicine without first having complied with the provisions of the act of the General Assembly of the state of Ohio, entitled, 'an act to regulate the practice of medicine in the state of Ohio,'" passed February 27, 1896."

I think, in saying that, the indictment does not say enough. It is not enough to say that a person has violated the law against larceny; it is not enough to say that a person has violated the law, or the provision of the law as to medical practice; but the manner in which the law has been violated must be more definitely stated.

The prosecutor does not himself contemplate that this general provision is enough; for he attempts more specifically to define the particular infraction of the law in the phraseology: "He, the said E. C. Morrill, not having then and there and theretofore obtained or received from the state board of medical registration and examination of the state of Ohio, a certificate as required by the act aforesaid, entitling him to practice medicine in the state of Ohio."

As I have said, it does not appear from the indictment that he was a person who needed to have a certificate entitling him to practice, within the meaning of the first section of this act of 1896; but rather a certificate evidencing his right to continue in the practice.

An allegation that a person violates the law in practicing medicine, not having obtained a certificate, to use the words here, or substantially the words, is hardly an indictment charging the defendant with not attempting to obtain a certificate. It may be altogether probable, but it is not the office of the court to find, that this defendant considered the law as invalid, and never made any application and never tried to obtain a certificate. The court can not judicially find that charge in this indictment, and, in that view of it, it seems to me the indictment is defective; that it does not charge with sufficient definiteness what the prosecutor evidently intends to charge, —the failure to obtain a certificate, by reason of the neglect or refusal to do the acts which the law enjoins upon the person desiring to continue in the practice of medi-

cine. It is barely possible that, if a person had applied to the board for the right to continue in practice, and, upon his doing everything that the law required from him, they arbitrarily refused to grant a certificate, he might still not have the right to continue in practice until he had first, by some procedure, compelled them to grant the proper certificate to him. But I hardly think the law would attach criminality to a man for continuing to practice, if he had fully complied with all these requirements of the law, and the only fault was that of the board. I hardly think the law would force him to discontinue the practice in which he had, prior to the passage of the law, been legally engaged, upon their mere failure to grant a certificate, until such time as he could compel them by mandamus proceeding, or some other, to grant the certificate. That would be debarring him from the practice of medicine without any violation of the law on his part; it would deprive him of a valuable right, and it might entail a loss, not merely for the time during which he was so deprived of the right, but it might injure his practice permanently by the loss of his patients.

I am inclined to think that if he has complied with the requirements of the act, up to the point of the issuing of the certificate by the state board, and then they have failed or refused to issue it, he is not amenable to the law.

It has not been altogether clear as to whether this matter should be reached by a motion to quash, or by demurrer; but it is not of very much consequence, except as a matter of procedure. A motion to quash, as provided by sec. 7249, of the Rev. Stats., may be made in all cases when there is a defect apparent upon the face of the record, including defects in the form of the indictment, or in the manner in which the offense is charged.

The statute as to demurrer is found in sec. 7251: "The accused may demur when the facts stated in the indictment do not constitute an offense punishable by the laws of this state, or when the intent is not alleged, and proof of the intent is necessary to make out the offense charged."

Sec. 7253, provides that: "The accused shall be taken to have waived all defects which may be excepted to by a motion to quash, or a plea in abatement, by demurring to an indictment, or pleading in bar, or the general issue."

I am not altogether clear that the objection to the indictment should be reached by a motion to quash. I am inclined to think that, whether it be open to a motion to quash or not, it is still subject to the objection which may be raised by demurrer,—that the facts stated in the indictment do not constitute an offense punishable by the laws of this state; that is, that the mere practice without having first obtained a certificate, is not an offense punishable by the laws of this state. The prosecutor has, however, attempted to

charge a statutory offense. The phraseology is too indefinite to render the attempt a success, and so viewing the matter, I am inclined to hold the motion to quash well taken. Except as a matter of procedure, it it is of no consequence, because the same question could be raised by demurrer, and as counsel have announced, would be so raised, should the motion not prevail. It is a mere question of form as to the manner in which advantage is taken of the defects in the indictment. The motion to quash will be sustained.

J. R. McKnight, Pros. Atty., for state.
S. M. Young, for defendant.